UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------------------------------------------------------------------------ X

United States of America,

      Plaintiff,

  v.

HINO MOTORS, LTD.,

      Defendant.

 

No. 2:25-cr-20016

Hon. Mark A. Goldsmith

Offense: (1) Conspiracy

Violation: (1) 18 U.S.C. § 371

Statutory Maximum Period of Probation:
Five years

Statutory Minimum Period of Probation:
None/Not Applicable

Statutory Maximum Fine: 18 U.S.C. § 3571(d) (the greater of twice the gross gain or twice the gross loss)

Statutory Minimum Fine: None/Not Applicable

------------------------------------------------------------------ X

## PLEA AGREEMENT

The United States of America, by and through the United States Attorney's Office for the Eastern District of Michigan, and the Department of Justice, Environment and Natural Resources Division, Environmental Crimes Section (collectively hereafter, "the Offices"), and the Defendant, HINO MOTORS, LTD. ("HML"), by and through its undersigned attorneys, and through its authorized representative, pursuant to authority granted by the Defendant and with the consent of the Board of Directors, hereby submit and enter into this plea agreement (the "Agreement"), pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The terms and conditions of this Agreement are as follows:

1. **Guilty Plea**

   A.   **Waiver of Indictment and Venue**

   Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Defendant agrees to waive its right to grand jury indictment and its right to challenge venue in the United States District Court for the Eastern District of Michigan, and to plead guilty to Count One of the Information filed herein (the "Information").

   B.   **Count of Conviction**

   The Information charges the Defendant with one count of conspiracy to defraud the United States, to violate the Clean Air Act, to commit wire fraud, and to smuggle goods into the United States, all in violation of 18 U.S.C. § 371. The

2

Defendant further agrees to persist in that plea through sentencing and, as set forth below, to cooperate fully with the Offices in their investigation into the conduct described in this Agreement and other conduct related to the import into, and sale in, the United States of diesel engines that failed to comply with U.S. regulations as described in detail in the Information.

C.    **Elements of Offense**

The Defendant understands that to be guilty of this offense, the following essential elements of the offense must be satisfied:

Count One (Conspiracy)

(1)    The elements for conspiracy to defraud the United States by obstructing the lawful function of the federal government are as follows:

i.    That two or more persons conspired, or agreed, to impair, obstruct, or defeat the lawful function of the United States or one of its agencies or departments, by dishonest means, as more fully described in the Information;

ii.    That the defendant knowingly and voluntarily joined the conspiracy; and

3

iii.     That a member of the conspiracy did one of the overt acts described in the Information for the purpose of advancing or helping the conspiracy.

(2)     The elements for conspiracy to violate the Clean Air Act, the wire fraud statute, and the smuggling statute are as follows:

i.     That two or more persons conspired, or agreed, to commit a crime, in this case, a violation of the Clean Air Act (42 U.S.C. § 7413(c)(2)(A)), the wire fraud statute (18 U.S.C. § 1343), and the smuggling statute (18 U.S.C. § 545) as described below;

ii.     That the defendant knowingly and voluntarily joined the conspiracy; and

iii.     That a member of the conspiracy did one of the overt acts described in the Information for the purpose of advancing or helping the conspiracy.

*Object of the Conspiracy – Clean Air Act – 42 U.S.C. § 7413(c)(2)(A)*

i.     The defendant knowingly made (or caused to be made) a false material statement, representation, or certification, or omission of material information;

ii.      The statement, representation or certification that was made (or omitted), or caused to be made or omitted, was in a notice, application, record, report, plan or other document required to be filed or maintained under the Clean Air Act; and

iii.      The statement, representation, certification, or omission of information was material.

*Object of the Conspiracy – Wire Fraud – 18 U.S.C. § 1343:*

i.      The defendant knowingly participated in, devised, or intended to devise a scheme to defraud in order to obtain money or property for the defendant or others;

ii.      The scheme included a material misrepresentation or concealment of a material fact;

iii.      The defendant had the intent to defraud; and

iv.      The defendant used (or caused another to use) wire, radio, or television communications in interstate or foreign commerce in furtherance of the scheme.

*Object of the Conspiracy – Smuggling – 18 U.S.C. § 545:*

i.      The defendant knowingly imported merchandise, to wit, diesel engines, into the United States; and

ii.  The defendant did so knowing such importation was contrary to law, that is, the diesel engines were not covered by a valid certificate of conformity.

D. **Statutory Maximum Penalties**

The statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 371 (Count One) is a fine of $500,000 or twice the gross pecuniary gain or gross pecuniary loss resulting from the offense, whichever is greatest, 18 U.S.C. §§ 3571(c)–(d); five years' probation, 18 U.S.C. § 3561(c)(1); and a mandatory special assessment of $400, 18 U.S.C. § 3013(a)(2)(B).

E. **Factual Basis for Guilty Plea**

The Defendant is pleading guilty because it is guilty of the charges contained in the Information. The Defendant admits, agrees, and stipulates that the factual allegations set forth in the Information are true and correct, that it is responsible for the acts of its employees and agents described in the Information, and that the Information accurately reflects the Defendant's criminal conduct. The Defendant further agrees that the Information provides an adequate factual basis for acceptance of the guilty plea. The Defendant will neither contest the admissibility of, nor contradict, the facts set forth in the Information in any proceeding.

2.      **Sentencing Guidelines**

   A.      **Standard of Proof**

The Court will find sentencing factors by a preponderance of the evidence.

   B.      **Guideline Range**

The parties agree that the Court must determine an advisory sentencing guideline range pursuant to the United States Sentencing Guidelines (U.S.S.G.). The Court will then determine a sentence within the statutory range after considering the advisory sentencing guideline range and the factors listed in 18 U.S.C. § 3553(a). There are no sentencing guideline disputes between the parties in this case. The parties' agreement herein to the guideline sentencing factors set forth below constitutes proof of those factors sufficient to satisfy the applicable burden of proof. The Defendant understands that if the Court accepts this Agreement, the Court is bound by the sentencing provisions in Paragraph 3.

The Offices and the Defendant agree that pursuant to U.S.S.G. § 8C2.2, no precise determination of the guideline fine range is required. While the Defendant would be entitled to a significant reduction in the applicable guideline range because of its substantial cooperation with the government's investigation and its remediation of the misconduct, it is readily ascertainable that the Defendant cannot and is not likely to become able (even on an installment schedule) to pay either the

7

minimum advisory guidelines fine or a reduced fine that accounts for its cooperation and remediation. The Offices and the Defendant agree that pursuant to U.S.S.G. § 8C3.3(b), reducing the fine to $521,760,000 based on Defendant's inability to pay, and taking into consideration Defendant's cooperation and remediation and establishing an installment schedule of that reduced fine, is not more than necessary to avoid substantially jeopardizing the continued viability of the Defendant.

The Offices and the Defendant agree that application of the U.S.S.G. to determine the fine range yields the following analysis:

a. The 2024 U.S.S.G. are applicable to this matter.

b. <u>Offense Level</u>. Based upon U.S.S.G. § 2B1.1, the total offense level is 40, calculated as follows:

| | | |
|---|---|---|
| (a)(2) | Base Offense Level | 6 |
| (b)(1)(P) | Amount of Loss > $550 million | +30 |
| (b)(2)(A)(i) | More Than 10 Victims | +2 |
| (b)(10)(B) | Substantial Part of Scheme Committed from Outside the United States | +2 |
| **TOTAL** | | 40 |

c. <u>Base Fine</u>. Based upon U.S.S.G. § 8C2.4(a), the base fine is $1,087,000,000 (the pecuniary gain to the Defendant from the offense).

8

d.      Culpability Score. Based upon U.S.S.G. § 8C2.5, the culpability score is 6, calculated as follows:

| | | |
|---|---|---|
| (a) | Base Culpability Score | 5 |
| (b)(1) | The unit of the organization within which the offense was committed had 200 or more employees and an individual within high-level personnel of the unit participated in, condoned, or was willfully ignorant of the offense | +3 |
| (g)(3) | The organization fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct | -2 |
| **TOTAL** | | 6 |

Calculation of Fine Range:

| | |
|---|---|
| Base Fine | $1,087,000,000 |
| Multipliers | 1.2 (min)/2.4 (max) |
| Fine Range | $1,304,400,000 (min)/ $2,608,800,000 (max) |

e.      Application of the Alternative Fines Act, 18 U.S.C. 3571(d), mandates a statutory maximum fine under these circumstances of twice the gross gain, resulting in a fine range of:

9

| **Advisory Guidelines Fine Range as capped by the Alternative Fines Act** | **$1,304,400,000 (min) to $2,174,000,000 (max)** |
|---|---|

3.      **Sentence**

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Offices and the Defendant agree that the appropriate disposition of this case is as set forth in this Section and agree that the Court should impose it.

A.      **Relevant Considerations**

The Offices enter into this Agreement based on the individual facts and circumstances presented by this case and the Defendant, including:

(1)     the nature and seriousness of the offenses, including continued sales in the United States of non-conforming engines after the Defendant was on notice of EPA's criminal investigation;

(2)     the Defendant's lack of prior criminal history;

(3)     the Defendant's exemplary cooperation with the Offices' investigation, which significantly improved after engaging new U.S. counsel by, among other things, (i) gathering substantial amounts of evidence and performing forensic data collections in multiple jurisdictions; (ii) producing documents, including translations, to the Offices in ways that did not implicate foreign data privacy laws; (iii) collecting, analyzing, organizing, and producing voluminous evidence and information; (iv) conducting hundreds of interviews in the United

10

States and overseas; (v) providing non-privileged facts relating to individuals and companies involved in the criminal conduct; and (vi) facilitating and encouraging cooperation and voluntary disclosure of information and documents by current and former company personnel;

(4)     the Defendant's agreement to continue to cooperate with the Offices in any ongoing investigation of the conduct of the Defendant and its officers, directors, employees, agents, business partners, and consultants relating to the violations to which the Defendant is pleading guilty;

(5)     the Defendant's agreement to compensate members of the class in *Express Freight International v. Hino Motors, Ltd.*, No. 1:22-cv-22483-DPG (S.D. Fla.) which consists of victims of the underlying criminal conduct that is the subject of this Agreement, and to pay approximately $437 million divided as follows: (1) a cash fund of $237 million to be paid evenly to all class members (which includes more than 100,000 class members); (2) an 8-year extended warranty for each vehicle, inclusive of parts and labor, estimated to cost at least $274 million; and (3) an agreement that if there is a mandatory recall or repair campaign in the next three years, impacted vehicles will automatically receive a new parts warranty with an additional five years of coverage. The fund is non-reversionary, and no monies will be returned to the Defendant;

11

(6)    the Defendant's implementation of remedial measures, including organizational, structural, and leadership changes, such as creating and staffing a formal compliance function in charge of general and technical compliance; separating the engine development and certification functions; conducting compliance training on general and technical compliance topics; revising Defendant's global credo and code of conduct, and creating or enhancing additional compliance policies and procedures; maintaining, enhancing, and promoting an internal whistleblower system; providing additional resources to the internal audit function; providing communications from senior leadership about the importance of compliance, including by undertaking efforts to educate employees about past misconduct and how it affected the Defendant's customers and business partners; and undertaking specific reforms to its engine-related practices, including additional controls around test data entry and data storage systems, and halting certifications for new diesel engines for the U.S. market.  Since 2020, the Defendant reassigned 18 employees involved in the testing and certification process, and has since terminated the employment of 3 individuals who participated in, or failed to supervise employees who participated in, the misconduct described in the Information, demoted or suspended an additional 10 individuals who participated in the misconduct described in the Information for varying periods, and disciplined

12

an additional  2 employees who participated in the misconduct described in the Information;

(7)     the Defendant's commitment to continue to enhance its compliance program and internal controls, including at its U.S. subsidiaries;

(8)     the Defendant's agreement, as part of its continuing cooperation obligations, to ensure that the Defendant and its U.S. subsidiaries implement an effective compliance program, and to submit to strict reporting requirements, including annual attestations by both the Presidents and Chief Executive Officer of HML and the President and Chief Executive Officer of HMM, as well as any successor corporation to either HML or HMM, under penalty of perjury, to the Court and the Offices that there have been no violations of the U.S. Clean Air Act, its implementing regulations, and other federal and state environmental laws and regulations concerning vehicle emissions, vehicle or engine emissions certification, fuel consumption, or the importation of goods into the United States that have not been previously reported to the Offices;

(9)     the Defendant's agreement not to import, sell, cause to be imported on its behalf, or cause to be sold on its behalf any Hino-manufactured diesel engines in the United States during the Term of Probation, except for any

replacement engines—as defined in 40 C.F.R. § 1068.240—that may be expressly allowed by EPA;

(10)   the Defendant's agreement, subject to the conditions laid out in Paragraph 3(E) of this Agreement, to forfeit under 18 U.S.C. § 981(a)(1)(C) together with 28 U.S.C. § 2461(c) any proceeds it obtained as a result of the conspiracy charged in Count One of the Information;

(11)   the Defendant's anticipated resolutions of outstanding regulatory matters and class action lawsuits in Canada and Australia; and

(12)   the Defendant's present financial condition, which does not enable it to pay either an advisory guidelines range fine or a fine that is reduced to account for its substantial cooperation; fulfill its obligations in related civil actions brought by the federal government and State of California, including obligations to pay civil penalties and engage in field fixes, mitigation, and extended warranty provision; fulfill its obligations as part of the related civil class action settlement; and fulfill its anticipated obligations in connection with foreign litigation.

(13)   Accordingly, after considering (1) through (12) above, and Defendant's substantial cooperation, the parties stipulate that a criminal fine of $521,760,000 is sufficient but not greater than necessary in this case.

B.   **Fine.**

14

The Defendant agrees to pay a total criminal fine of $521,760,000 with interest pursuant to 18 U.S.C. §§ 3572(d)(1) and 3612(f). In light of the Defendant's financial position, the parties agree that it is in the interest of justice for the Court to order payment to be made pursuant to the following installment schedule:

| PAYMENT | PAYMENT DEADLINE | AMOUNT TO BE PAID |
| --- | --- | --- |
| First | Within 30 days of entry of judgment | $130,440,000 |
| Second | No later than the one-year anniversary of the entry of judgment | $130,440,000 |
| Third | No later than the second-year anniversary of entry of judgment | $130,440,000 |
| Fourth | No later than the third-year anniversary of entry of judgment | $130,440,000 plus all interest that has accrued as provided below |
| **TOTAL AMOUNT PAID WITHIN 3 YEARS OF ENTRY OF JUDGMENT:** | | **$521,760,000 plus all accrued interest** |

Interest shall be computed in accordance with 18 U.S.C. § 3612(f)(2). The Defendant may make, at any time, additional payments towards the criminal fine, or pay the fine in full prior to the fourth year of the entry of judgment and reduce its interest liability accordingly.

Pursuant to 18 U.S.C. § 3572(d)(3), the Defendant agrees, and the judgment shall so direct, that it will notify the Court of any material change in the Defendant's economic circumstances that might affect the Defendant's ability to pay the fine. Upon receipt of such notice the Court may, on its own motion or the motion of any party, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.

Without the concurrence of the Offices, the Defendant shall not seek or accept directly or indirectly reimbursement or indemnification from any source with regard to the penalty or disgorgement amounts that Defendant pays pursuant to the Agreement. The Defendant further agrees that it shall not claim, assert, or apply for, either directly or indirectly, any tax deduction, tax credit, or any other offset with regard to any U.S. federal, state, or local tax or taxable income for any fine or forfeiture paid pursuant to this Agreement.

C.    **Probation**

The parties agree that a term of organizational probation for a period of five years should be imposed on the Defendant (the "Term of Probation") pursuant to 18 U.S.C. §§ 3551(c)(1) and 3561(c)(1). The parties further agree, pursuant to U.S.S.G. §8D1.4, that the Term of Probation shall include as conditions the obligations set forth in Paragraphs 5 and 6 below as well as the payment of the fine set forth in this

Paragraph but shall not include the obligations set forth in Paragraphs 7 and 15 below.

### D. Special Assessment

The Defendant understands it is required at the time of sentencing to immediately pay to the Clerk of the Court for the United States District Court for the Eastern District of Michigan a mandatory special assessment of $400.

### E. Forfeiture

As part of this agreement, the Defendant agrees to forfeit under 18 U.S.C. § 981(a)(1)(C) together with 28 U.S.C. § 2461(c) any proceeds it obtained as a result of the conspiracy charged in Count One of the Information. Specifically, the Defendant agrees to the entry of a forfeiture money judgment against it, in favor of the United States, in the amount of $1,087,000,000. The Defendant agrees that it obtained at least $1,087,000,000 in gross proceeds as a result of the conspiracy described in the Information. The Offices agree that the forfeiture money judgment will be deemed fully satisfied so long as (1) the Defendant makes future payments of at least $1,087,000,000 as part of the civil class action settlement in *Express Freight International v. Hino Motors, Ltd.*, No. 1:22-cv-22483-DPG (S.D. Fla.) and Civil Consent Decree(s) and Settlement(s) with components of the federal government and State of California for civil penalties, fines, field fixes, warranty

17

extension obligations, and mitigation programs relating to the conduct addressed in the charging Information and (2) the Defendant fully complies with all of the terms of this Agreement, including the criminal fine payment schedule, as well as any Civil Consent Decree(s) and Settlement(s) concerning any requirement to make payments for civil penalties, fines, field fixes, warranty extension obligations, and mitigation programs, entered into between the Defendant and any components of the federal government and State of California relating to the conduct addressed in the charging Information, including, but not limited to, the U.S. Department of Justice's Environmental Enforcement Section, EPA, U.S. Customs and Border Protection ("CBP"), the National Highway Traffic Safety Administration ("NHTSA"), the California Office of the Attorney General, and the California Air Resources Board. Should the payments described in the prior sentence total less than $1,087,000,000, Defendant's forfeiture obligation shall be reduced by the amount already paid.

The parties agree that the Offices will not seek to collect on the balance of the forfeiture money judgment until a period beginning six months before the end of the Term of Probation. However, should the Defendant fail to meet any obligation in this Agreement, the Offices will be released from its agreement to not seek to collect the forfeiture money judgement until a period beginning six months before the end of the Term of Probation, and may proceed immediately to collect. Upon request of

18

the Offices, the Defendant agrees to provide the Offices with copies of such consent decrees and settlements, as well as an accounting of payments made in satisfaction of the same. Only payments toward such consent decrees and settlements made prior to the conclusion of Defendant's Term of Probation shall be credited toward satisfaction of the forfeiture money judgment.

The Defendant agrees that the forfeiture money judgment may be satisfied from any property that it owns or that is under its dominion and control. The Defendant explicitly agrees to the forfeiture of any assets it has now, or may later acquire, as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes its right to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

The Defendant knowingly, voluntarily, and intelligently waives all constitutional and statutory challenges, in any form, to any forfeiture carried out in accordance with this Agreement, on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Excessive Fines Clause of the Eighth Amendment.

The Defendant acknowledges its understanding that forfeiture is part of the sentence that may be imposed in this case and waives its right to challenge any failure by the Court to advise it of this, under Rule 11(b)(1)(J), or otherwise, when

19

its guilty plea is accepted. The Defendant further waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of forfeiture in the charging instrument, pronouncement of forfeiture at sentencing, and incorporation of forfeiture in the judgment.

### F.    Restitution

The parties agree that a restitution order is not appropriate in the instant case because the number of identifiable victims is so large as to make restitution impracticable. 18 U.S.C. § 3663A(c)(3)(A). Further, the amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to the victims is outweighed by the burden on the sentencing process. § 3663A(c)(3)(B). Moreover, as noted in Paragraph 3(A)(5) above, the Defendant has already agreed to compensate members of the class in *Express Freight International v. Hino Motors, Ltd.*, No. 1:22-cv-22483-DPG (S.D. Fla.), including businesses and individuals that purchased trucks with non-conforming engines.

### 4.    Other Charges

In exchange for the guilty plea of the Defendant and the complete fulfillment of all of its obligations under this Agreement, the Offices agree they will not file additional criminal charges against the Defendant or any of its direct or indirect

affiliates or subsidiaries related to: (1) any of the conduct described in the Information; and (2) any conduct disclosed by, or on behalf of, the Defendant or otherwise known to the Offices, EPA, FBI, CBP, or NHTSA as of the date of this Agreement, related to the conduct described in the Information.

The Offices, however, may use any information related to the conduct described in the Information against the Defendant: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code. This Paragraph does not provide any protection against prosecution for any other conduct, including but not limited to crimes committed in the future by the Defendant or by any of its officers, directors, employees, agents, or consultants. This Agreement does not close or preclude the investigation or prosecution of any natural persons, including any officers, directors, employees, agents, or consultants of the Defendant or natural persons associated with its direct or indirect affiliates, subsidiaries, or joint ventures, who may have been involved in any of the matters set forth in the Information, or in any other matters, regardless of their affiliation with the Defendant. The Defendant agrees that nothing in this Agreement is intended to release the Defendant from any of the Defendant's excise

and income tax liabilities and reporting obligations for any and all income not properly reported and/or legally or illegally obtained or derived.

5.    **The Defendant's Obligations**

A.    Except as otherwise provided in Paragraphs 6 and 7 below in connection with the Defendant's cooperation obligations, the Defendant's obligations under the Agreement shall last and be effective for a period beginning on the date on which the Court accepts this Agreement and ending five years from the date on which the Judgment is entered.

B.    The Defendant agrees to abide by all terms and obligations of this Agreement as described herein, including, but not limited to, the following:

(1)    to plead guilty as set forth in this Agreement;

(2)    to abide by all sentencing stipulations contained in this Agreement;

(3)    to appear, through its duly appointed representatives, as ordered for all court appearances, and obey any other ongoing court order in this matter, consistent with all applicable U.S. and foreign laws, procedures, and regulations;

(4)    to commit no further crimes;

(5)    to be truthful at all times with the Court;

22

(6)     to pay the applicable fine, forfeiture money judgment, and special assessment;

(7)     to cooperate with and report to the Offices as provided in Paragraph 6;

(8)     to not import, sell, cause to be imported on its behalf, or cause to be sold on its behalf any Hino-manufactured diesel engines in the United States during the Term of Probation, except for any replacement engines—as defined in 40 C.F.R. § 1068.240—that may be expressly allowed by EPA;

(9)     to continue to implement a compliance and ethics program designed to prevent and detect fraudulent conduct throughout its and its U.S. subsidiaries' operations; and to develop, adopt, implement, fund, and comply with its comprehensive compliance obligations as described in more detail in Exhibit 3. As part of that compliance program, the Defendant has agreed to submit to strict reporting requirements, including annual attestations by both the President and Chief Executive Officer of HML and the President and Chief Executive Officer of HMM, as well as any successor corporations to either HML or HMM, under penalty of perjury, to the Court and the Offices that there have been no violations of the U.S. Clean Air Act, its implementing regulations, and other federal or state environmental laws and regulations concerning vehicle emissions, vehicle or engine emissions

23

certifications,  fuel consumption, or the importation of goods into the United States that have not been previously reported to the Offices; and

(10)   for the Term of Probation, to contract with and compensate an external compliance consultant for the purpose of testing the Defendant's and its U.S. subsidiaries' compliance and ethics program to comply with Paragraph 5(B)(9) above, and the obligations detailed in Exhibit 3 below.

C.      The Defendant agrees that any fine imposed by the Court, plus interest, will be due and payable in accordance with the terms of this Agreement at Paragraph 3.B above. The Defendant further agrees to immediately pay the Clerk of the Court for the United States District Court for the Eastern District of Michigan the mandatory special assessment of $400 at the time of sentencing.

6.      **The Defendant's Cooperation and Reporting Obligations**

A.      The Defendant shall cooperate fully with the Offices in any and all matters relating to the conduct described in this Agreement and the Information and other conduct under investigation by the Offices during the Term of Probation until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term of Probation. At the request of the Offices, the Defendant shall also cooperate fully with other United States' domestic law enforcement and regulatory authorities and agencies in any

investigation of the Defendant or its affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to conduct described in this Agreement and Information, and other conduct related to the Defendant's design, calibration, and/or emission testing, and fraudulent representations pertaining thereto, and sales of non-conforming engines in the United States. The Defendant's cooperation pursuant to this Paragraph is subject to applicable law and regulations, as well as valid claims of attorney-client privilege or attorney work-product doctrine; however, the Defendant must provide to the Offices timely notice of its intent to rely upon this provision along with a log of any information or cooperation that is withheld based on an assertion of law, regulation, or privilege, and the Defendant bears the burden of establishing the validity of any such assertion. The Defendant agrees that its cooperation pursuant to this Paragraph shall include, but not be limited to, the following:

(1)    The Defendant shall truthfully disclose all factual information with respect to its activities, those of its affiliates and subsidiaries, and those of its present and former directors, officers, employees, agents, and consultants, including any evidence or allegations and internal or external investigations, about which the Defendant has any knowledge or about which the Offices may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the

25

Defendant to provide to the Offices, upon request, any document, record, or other tangible evidence about which the Offices may inquire of the Defendant.

(2)    Upon request of the Offices, the Defendant shall designate knowledgeable employees, agents, or attorneys to provide to the Offices the information and materials described in Paragraph 6(A)(1) above on behalf of the Defendant. It is further understood that the Defendant must at all times provide complete, truthful, and accurate information.

(3)    The Defendant shall use best efforts to make available for interviews or testimony, as requested by the Offices, present or former officers, directors, employees, agents, and consultants of the Defendant. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic law enforcement and regulatory authorities. Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Defendant, may have material information regarding the matters under investigation.

(4)    With respect to any information, testimony, documents, records, or other tangible evidence provided to the Offices pursuant to this Agreement, the Defendant consents to any and all disclosures to other governmental authorities in

the United States of such materials as the Offices, in their sole discretion, shall deem appropriate.

B.      In addition to the obligations in Paragraph 6(A), during the Term of Probation, should the Defendant learn of any evidence or allegation of a violation of U.S. federal law by or on behalf of the Defendant and relating to emissions of its vehicles, false or misleading statements made to U.S. public authorities or regulators by or on behalf of the Defendant, fraud or misrepresentations in the sale or marketing of its products in the United States, or obstruction of any pending or contemplated U.S. federal, state or local investigation or proceeding, the Defendant shall promptly report such evidence or allegation to the Offices. Annually, and thirty days prior to the end of the Term of Probation, the Defendant, by the President and Chief Executive Officer of HML and the President and Chief Executive Officer of HMM, will certify to the Offices that HML and HMM, respectively, have met their disclosure obligations pursuant to this Paragraph. Each certification will be deemed a material statement and representation by HML and HMM to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and it will be deemed to have been made in the judicial district in which this Agreement is filed.  The certification required by this Paragraph is in addition to the annual attestations set forth in Paragraph 5(B)(9).

7.    **Other Obligations**

A.    The Defendant agrees that it will report to the Offices periodically and as described in Exhibit 4 of this Agreement, during the Term of Probation, regarding remediation, implementation, and testing of its compliance program and internal controls, policies, and procedures described in Exhibit 3. During the Term of Probation, the Defendant shall, as described in Exhibit 4 of this Agreement, (i) conduct an initial review and submit an initial report, and (ii) conduct and prepare follow-up reviews and reports.

B.    While the obligation set forth in this Paragraph is not a condition of probation, any failure to comply with the obligation set forth in this Paragraph shall constitute a breach of this Agreement and be subject to the terms set forth in Paragraph 9 below.

8.    **Waiver of Appellate and Other Rights Under United States Law**

A.    The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as provided in this Agreement. The Defendant understands that the rights of criminal defendants include the following:

(1)    the right to plead not guilty and to persist in that plea;

(2)    the right to a jury trial;

(3)     the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceedings;

(4)     the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; and

(5)     pursuant to 18 U.S.C. § 3742, the right to appeal the sentence imposed.

B.     Nonetheless, the Defendant knowingly waives these rights, including the right to appeal or collaterally attack the conviction and any sentence within the statutory maximum described above in Paragraph 1(D) (or the manner in which that sentence was determined) on the grounds set forth in 18 U.S.C. § 3742, or on any ground whatsoever except those specifically excluded in this Paragraph, in exchange for the concessions made by the United States in this plea agreement. This Agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b). The Defendant also knowingly waives the right to bring any collateral challenge of either the conviction, or the sentence imposed in this case. The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case,

including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a. The Defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution related to the conduct described in the Information, including any prosecution that is not time-barred on the date that this Agreement is signed in the event that: (a) the conviction is later vacated for any reason; (b) the Defendant violates this Agreement; or (c) the plea is later withdrawn, provided such prosecution is brought within one year of any such vacation of conviction, violation of agreement, or withdrawal of plea plus the remaining time period of the statute of limitations as of the date that this Agreement is signed. The Offices are free to take any position on appeal or any other post-judgment matter. Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the Defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

C.     Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 limit the admissibility of statements made in the course of plea proceedings or plea discussions in both civil and criminal proceedings, if the guilty plea is later withdrawn. The Defendant expressly warrants that it has discussed these rules with its counsel and understands them. Solely to the extent set forth below, the Defendant voluntarily waives and gives up the rights enumerated in Federal Rule of Criminal

Procedure 11(f) and Federal Rule of Evidence 410. Specifically, the Defendant understands and agrees that any statements that it makes in the course of its guilty plea or in connection with the Agreement—including all facts set forth in the Information—are admissible against it for any purpose in any U.S. federal criminal proceeding if the Defendant nevertheless withdraws its guilty plea.

9. **Breach of Agreement**

A.      If, during the Term of Probation, the Defendant (a) commits any felony under U.S. federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information; (c) fails to cooperate, as set forth in Paragraph 6 of this Agreement; (d) fails to implement a compliance program as set forth in Paragraph 3(A)(8) of this Agreement; (e) commits any acts that, had they occurred within the jurisdictional reach of the conspiracy statute, 18 U.S.C. § 371, the Clean Air Act, 42 U.S.C. § 7413(c)(2)(A), or the wire fraud statute, 18 U.S.C. § 1343, would be a violation of the conspiracy, Clean Air Act, or wire fraud statutes; or (f) otherwise fails specifically to perform or to fulfill completely each of the Defendant's obligations under the Agreement, regardless of whether the Offices become aware of such a breach after the term of the Agreement, the Defendant shall thereafter be subject to prosecution for any federal criminal violation of which the Offices have knowledge, including, but not limited to, the charges in the Information

31

described in Paragraph 1, which may be pursued by the Offices in the U.S. District Court for the Eastern District of Michigan or any other appropriate venue. Determination of whether the Defendant has breached the Agreement and whether to pursue prosecution of the Defendant shall be in the Offices' sole discretion. Any such prosecution may be premised on information provided by the Defendant. Any such prosecution relating to the conduct described in the Information or relating to conduct known to the Offices prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Defendant, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term of Probation plus one year. The Defendant further agrees that all tolling agreements executed thus far remain in full force and effect. Thus, by signing this Agreement, the Defendant agrees that the statute of limitations with respect to any such prosecution that is not time-barred as of November 19, 2020, shall continue to be tolled for the Term of Probation plus one year. The Defendant gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such prosecution or action, except to the extent that such defenses existed as of November 19, 2020. In addition, the Defendant agrees that the statute of limitations as to any

32

violation of federal law that occurs during the term of the cooperation obligations provided for in Paragraph 6 of the Agreement will be tolled from the date upon which the violation occurs until the earlier of the date upon which the Offices are made aware of the violation or the duration of the Term of Probation plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

B.      In the event the Offices determine that the Defendant has breached this Agreement, the Offices agree to provide the Defendant with written notice of such breach prior to instituting any prosecution resulting from such breach. Within thirty days of receipt of such notice, the Defendant shall have the opportunity to respond to the Offices in writing to explain the nature and circumstances of such breach, as well as the actions the Defendant has taken to address and remediate the situation, which explanation the Offices shall consider in determining whether to pursue prosecution of the Defendant.

C.      In the event that the Offices determine that the Defendant has breached this Agreement: (a) all statements made by or on behalf of the Defendant to the Offices or to the Court, including all statements and facts set forth in the Information, and any testimony given by the Defendant before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this

Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Offices against the Defendant; and (b) the Defendant shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Defendant prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Defendant, will be imputed to the Defendant for the purpose of determining whether the Defendant has violated any provision of this Agreement shall be in the sole discretion of the Offices.

D.     The Defendant acknowledges that the Offices have made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Defendant breaches this Agreement and this matter proceeds to judgment. The Defendant further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

34

10.     **Parties to the Plea Agreement**

The Defendant understands and agrees that this Agreement is between the Offices and the Defendant and does not bind any other division or section of the Department of Justice or any other federal, state, or local prosecuting, administrative, or regulatory authority for the conduct described in the Information. There are collateral consequences that may flow from a felony conviction that cannot fully be predicted by the parties or the Court at the time of sentencing. Those collateral consequences may include, but are not limited to, possible adverse consequences involving permitting, licensure, and authorization at the federal, state, and local levels; debarment; and filings in connection with the Securities and Exchange Commission. Nothing in this plea agreement limits any other federal, state, or local agency or authority from taking actions pursuant to administrative, civil, or criminal authority. The parties understand both the potential consequences discussed above and that there may be additional consequences flowing from a felony conviction and nonetheless willingly enter this plea agreement.

Nevertheless, the Offices will bring this Agreement and the nature and quality of the conduct, cooperation, and remediation of the Defendant, its direct or indirect affiliates, subsidiaries, and joint ventures, to the attention of other prosecuting

35

authorities or other agencies, as well as debarment authorities, if requested by the Defendant.

The Defendant agrees that this Agreement will be executed by an authorized corporate representative. The Defendant further agrees that such execution is authorized by the Defendant's Board of Directors, as further represented in Exhibit 1 in the Defendant's Corporate Officer Certificate, and that the Corporate Officer is fully authorized to enter into this Agreement and take all necessary steps to effectuate this Agreement, and that the signatures on this Agreement by the Defendant and its counsel are authorized by the Defendant's Board of Directors, on behalf of the Defendant.

The Defendant agrees that it has the full legal right, power, and authority to enter into and perform all of its obligations under this Agreement.

11. **Change in Corporate Form**

Except as may otherwise be agreed by the parties in connection with a particular transaction, the Defendant agrees that in the event that, during the Term of Probation, the Defendant undertakes any change in corporate form, including if the Defendant sells, merges, or transfers business operations that are material to the Defendant's consolidated operations, or to the operations of any subsidiaries or affiliates involved in the conduct described in the Information, as they exist as of the

36

date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. The purchaser or successor in interest must also agree in writing that the Offices' ability to declare a breach under this Agreement is applicable in full force to that entity. The Defendant agrees that the failure to include these provisions in the transaction will make any such transaction null and void. The Defendant shall provide notice to the Offices at least thirty days prior to undertaking any such sale, merger, transfer, or other change in corporate form. The Offices shall notify the Defendant prior to such transaction (or series of transactions) if they determine that the transaction(s) will have the effect of circumventing or frustrating the enforcement purposes of this Agreement. If at any time during the Term of Probation the Defendant engages in a transaction(s) that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, the Offices may deem it a breach of this Agreement pursuant to Paragraph 9 of this Agreement. Nothing herein shall restrict the Defendant from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such

indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the Offices. Nothing herein shall restrict the Defendant from making changes in corporate form, so long as such changes do not have the effect of circumventing or frustrating this Agreement. Furthermore, notwithstanding the foregoing, nothing in this Paragraph 11 shall be construed as applying to assets not owned by the Defendant as of the date immediately prior to the closing of any such sale, merger, transfer, or other change in corporate form.

12.   **Financial Obligations Are Not Dischargeable**

The parties warrant, in evaluating whether to execute this Agreement, they have (a) intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to the Defendant, within the meaning of 11 U.S.C. § 547(c)(l); and (b) concluded that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to, and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which the Defendant was or became indebted to on or after the date of entry of the Defendant's guilty plea, within the meaning of 11 U.S.C. § 548(a)(l). The Defendant

38

agrees its obligations under Paragraphs 3(B), (D), and (E) of this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and the Defendant shall not argue or otherwise take the position in any such case, action, or proceeding that: (1) the Defendant's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (2) the Defendant was insolvent at the time this Agreement was entered into; or (3) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to the Defendant. The Defendant acknowledges that the agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement. The Defendant agrees all obligations payable under Paragraphs 3(B), (D), and (E) of this Agreement are not dischargeable in bankruptcy and shall be considered debt for a criminal fine, criminal monetary penalty, or forfeiture payable to and for the benefit of a governmental unit pursuant to 11 U.S.C. §§ 523(a)(7), 523(a)(13), and 1328(a)(3); and 18 U.S.C. § 3613(e).

13.    **Failure of Court to Accept Agreement**

This Agreement is presented to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The Defendant understands that, if the Court rejects this Agreement, the Court must: (a) inform the parties that the Court rejects the Agreement; (b) advise the Defendant's counsel that the Court is not required to

follow the Agreement and afford the Defendant the opportunity to withdraw its plea; and (c) advise the Defendant that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the Defendant than the Agreement contemplated. The Defendant further understands that if the Court refuses to accept any provision of this Agreement, neither party shall be bound by the provisions of the Agreement.

14.    **Presentence Report**

The Defendant and the Offices waive the preparation of a Presentence Investigation Report. The Defendant understands that the decision whether to proceed with the sentencing without a Presentence Investigation Report is exclusively that of the Court. In the event the Court directs the preparation of a Presentence Investigation Report, the Offices will fully inform the preparer of the Presentence Investigation Report, and the Court of the facts and law related to the Defendant's case. At the time of the plea hearing, the parties will suggest mutually agreeable and convenient dates for the sentencing hearing with adequate time for (a) any objections to the Presentence Investigation Report, and (b) consideration by the Court of the Presentence Investigation Report and the parties' sentencing submissions.

15.     **Public Statement by the Defendant**

A.      The Defendant expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the Defendant make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Defendant set forth above or the facts described in the Information. Any such contradictory statement shall, subject to cure rights of the Defendant described below, constitute a breach of this Agreement, and the Defendant thereafter shall be subject to prosecution as set forth in Paragraph 9 of this Agreement. The decision whether any public statement by any such person contradicting a fact contained in the Information will be imputed to the Defendant for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Offices. If the Offices determine that a public statement by any such person contradicts in whole or in part a statement contained in the Information, the Offices shall so notify the Defendant, and the Defendant may avoid a breach of this Agreement by publicly repudiating such statement(s) within five business days after notification. The Defendant shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Information provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the

41

Information. This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Defendant in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Defendant.

B.    The Defendant agrees that if it or any of its direct or indirect subsidiaries or affiliates issues a press release or holds any press conference in connection with this Agreement, the Defendant shall first consult the Offices to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Offices and the Defendant; and (b) whether the Offices have any objection to the release or statement.

16.    **Complete Agreement**

This document states the full extent of the Agreement between the parties. There are no other promises or agreements, express or implied. Any modification of this Agreement shall be valid only if set forth in writing in a supplemental or revised plea agreement signed by all parties.

**SO AGREED:**

**FOR HINO MOTORS, LTD.:**

Counsel has fully explained to the Board of Directors of Hino Motors, Ltd. the facts and circumstances of the case; all rights with respect to the offense charged in the Information; possible defenses to the offense charged in the Information; all rights with respect to the applicability of the U.S.S.G.; and the consequences of entering into this Plea Agreement and entering a guilty plea. Counsel has reviewed this entire Plea Agreement and its attachments with the client, through its President and Member of the Board, Satoshi Ogiso. Hino Motors, Ltd. understands the terms and conditions of this Plea Agreement, and Hino Motors, Ltd.'s decision to enter into this Plea Agreement is knowing and voluntary. Hino Motors, Ltd.'s execution of and entry into this Plea Agreement is done with Counsel's consent.

Date: January 15, 2025          By: _____

SATOSHI OGISO
President, Member of the Board
Hino Motors, Ltd.

Date: January 15, 2025          By: _____

Lanny Breuer
Noam Kutler
Mark Finucane
Jennifer Saperstein
Leah Saris
Covington & Burling LLP
Counsel for Hino Motors, Ltd.

43

**SO AGREED:**

**FOR THE DEPARTMENT OF JUSTICE:**

DAWN N. ISON
United States Attorney
Eastern District of Michigan

Date: January 15, 2025            By: _____

Mark Chasteen
Assistant U.S. Attorney
Chief, White Collar Crime Unit

By: _____

Andrew Yahkind
Assistant United States Attorney

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

Date: January 15, 2025            By: _____

Banumathi Rangarajan
Senior Trial Attorney
Environmental Crimes Section

44

**EXHIBIT 1**

**COMPANY OFFICER'S CERTIFICATE AND**
**CERTIFICATE OF COUNSEL**

Copies of the executed Company Officer's Certificate and Certificate of

Counsel for the Defendant are annexed hereto as "Exhibit 1."

Exh. 1-1

## COMPANY OFFICER'S CERTIFICATE

I have read the plea agreement between HINO MOTORS, LTD., (the "Defendant") and the United States of America, by and through the United States Attorney's Office for the Eastern District of Michigan, and the Department of Justice, Environment and Natural Resources Division, Environmental Crimes Section (the "Agreement") and carefully reviewed every part of it with outside counsel for the Defendant. I understand the terms of the Agreement and voluntarily agree on behalf of the Defendant to each of its terms. Before signing the Agreement, I consulted outside counsel for the Defendant. Counsel fully advised me of the rights of the Defendant, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of the Agreement with the Board of Directors. I have caused outside counsel for the Defendant to advise the Board of Directors fully of the rights of the Defendant, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in the Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing the Agreement on behalf of the Defendant, in any way to enter into the Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am a member of the Management Board

Exh. 1-2

and that I have been duly authorized by the Defendant to execute the Agreement on behalf of the Defendant.

**FOR HINO MOTORS, LTD.:**

Date: January 15, 2025          By: _____

SATOSHI OGISO
President, Member of the Board
Hino Motors, Ltd.

Date: January 15, 2025          By: _____

Lanny Breuer
Noam Kutler
Mark Finucane
Jennifer Saperstein
Leah Saris
Covington & Burling LLP
Counsel for Hino Motors, Ltd.

Exh. 1-3

## CERTIFICATE OF COUNSEL

I am counsel for HINO MOTORS, LTD., (the "Defendant") in the matter covered by the plea agreement between the Defendant and the United States of America, by and through the United States Attorney's Office for the Eastern District of Michigan, and the Department of Justice, Environment and Natural Resources Division, Environmental Crimes Section (the "Agreement"). In connection with such representation, I have examined relevant documents and have discussed, or caused to be discussed by counsel, the terms of the Agreement with the Board of Directors. Based on my review of the foregoing materials and discussion, I am of the opinion that the representative of the Defendant has been duly authorized to enter into the Agreement on behalf of the Defendant and that the Agreement has been duly and validly authorized, executed and delivered on behalf of the Defendant and is a valid and binding obligation of the Defendant. Further, I have carefully reviewed, or caused to be reviewed by counsel, the terms of the Agreement with the Board of the Directors of the Defendant. I have fully advised them, or caused them to be advised, of the rights of the Defendant, of possible defenses, of the Sentencing Guidelines' provisions and of the consequences of entering into the Agreement. To my

Exh. 1-4

knowledge, the decision of the Defendant to enter into the Agreement, with the

consent of the Board of Directors, is an informed and voluntary one.


Date: <u>January 15, 2025</u>        By: _____

Lanny Breuer
Noam Kutler
Mark Finucane
Jennifer Saperstein
Leah Saris
Covington & Burling LLP
Counsel for Hino Motors, Ltd.

Exh. 1-5

## EXHIBIT 2

## <u>CORPORATE RESOLUTIONS</u>

Copies of the Certificate of Corporate Resolutions for the Defendant are annexed hereto as "Exhibit 2."

Exh. 2-1

**HINO MOTORS, LTD., CERTIFICATE OF CORPORATE RESOLUTIONS**

On January 15, 2025, the Board of Directors (the "Board") of **HINO MOTORS, LTD.** ("HML"), resolved as follows:

**WHEREAS**, HML, through its external legal counsel, has been engaged in discussions with the United States Attorney's Office for the Eastern District of Michigan, and the United States Department of Justice, Environment and Natural Resources Division, Environmental Crimes Section (collectively, the "Offices") in connection with the Offices' investigation into potential criminal violations related to the certification, import, and sale of non-conforming diesel engines in the United States (the "Investigation");

**WHEREAS**, the Board has been advised by its external legal counsel of the terms of the Information and Plea Agreement, with Attachments, as circulated to the Board (collectively, the "Plea Agreement"), including but not limited to, the payment of a criminal fine; and

**WHEREAS**, the Board acknowledges that the Plea Agreement fully sets forth HML's agreement with the Offices with respect to criminal violations identified during the Investigation and that no additional promises or representations have been made to HML by any representatives of the Offices in connection with the disposition of the Investigation, other than those set forth in the Plea Agreement.

**THEREFORE**, this Board hereby **RESOLVES** that:

1.  The Board authorizes HML to: (a) consent to the filing of a one-count Information in the United States District Court for the Eastern District of Michigan charging HML with conspiring with others, in violation of Title 18, United States Code, Section 371, to defraud the United States and commit offenses against the United States; (b) waive indictment on such charge; (c) waive its rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); and (d) agree to pay a criminal fine of $521,760,000 and a Forfeiture Money Judgment in the amount of $1,087,000,000 to the United States Treasury pursuant to the terms of the Plea Agreement.

2.  The Board acknowledges that it is in the best interests of HML to enter the guilty plea provided for, and agree to the terms provided in, the Plea Agreement with the Offices in substantially the form and substance set forth in the form of the Plea Agreement presented to this Board;

Exh. 2-2

3.   The Board authorizes HML to enter into and perform HML's obligations under the Plea Agreement;

4.   The Board authorizes, empowers and directs HML's President, ("Authorized Officer"), and HML's external legal counsel, Covington & Burling LLP ("External Counsel"), to execute and deliver the Plea Agreement, substantially in such form as reviewed by this Board, with such changes as the Authorized Officer may approve;

5.   The Board authorizes, empowers and directs the Authorized Officer and External Counsel to take any and all actions as may be necessary or appropriate, and to approve the forms, terms or provisions of any agreement or other documents as may be necessary or appropriate to carry out and effectuate the purpose and intent of the foregoing resolution (including execution and delivery of any such agreement or document on behalf of HML);

6.   The Board hereby authorizes and empowers the Authorized Officer and External Counsel, as well as HML's Chief Compliance Officer and Operating Officer for Internal Audit, to act and speak on behalf of HML in any proceeding, including entry of a guilty plea in court on behalf of HML;

7.   All of the actions of any Authorized Officer or External Counsel, which would have been within the scope of and authorized by the foregoing resolution except that such actions were taken prior to the adoption of such resolutions, are hereby severally ratified, confirmed, approved and adopted as authorized actions of HML; and

8.   The Authorized Officer and External Counsel are individually authorized, empowered or directed to provide to the Offices a certified copy of these resolutions.

I hereby certify that the above is a true and accurate copy of the resolutions of

the Board of HML passed on January 15, 2025.

Date: January 15, 2025                     By: _____

Satoshi Ogiso
President, Member of the Board
Hino Motors, Ltd.

Exh. 2-3

**EXHIBIT 3**

**<u>CORPORATE COMPLIANCE PROGRAM</u>**

In order to address any deficiencies in its internal controls, compliance code, policies, and procedures regarding compliance with the Clean Air Act, its implementing regulations, and other U.S. federal environmental laws and regulations concerning vehicle emissions, vehicle and engine emissions certifications, fuel consumption, and the importation of goods into the United States, the Defendant, Hino Motors, LTD., agrees to continue, and cause its U.S. subsidiaries to continue, to conduct, in a manner consistent with all of its obligations under this Agreement, appropriate reviews of its existing internal controls, policies, and procedures.

Where necessary and appropriate, the Defendant agrees to modify its compliance program including with respect to its U.S. subsidiaries, including internal controls, compliance policies, and procedures in order to ensure that they maintain: (a) an effective system of internal controls designed to ensure the making and keeping of fair and accurate records related to the development and submission of documents concerning vehicle emissions and certification required by the Clean Air Act; and (b) a rigorous compliance program that incorporates relevant internal controls, as well as policies and procedures designed to effectively detect and deter violations of the Clean Air Act, its implementing regulations, and other federal

Exh. 3-1

environmental laws and regulations concerning vehicle emissions, vehicle and engine emissions certifications, fuel consumption, and U.S. import laws.

## High-Level Commitment

1.     The Defendant will ensure that its directors and senior management across the company and its U.S. subsidiaries provide strong, explicit, and visible support and commitment to the Defendant's corporate policy against violations of the Clean Air Act, its implementing regulations, other federal environmental laws and regulations concerning vehicle emissions, vehicle and engine emissions certifications, fuel consumption, U.S. import laws, and to the Defendant's compliance code.

## Policies and Procedures

2.     The Defendant will develop and promulgate a clearly articulated and visible corporate policy against violations of the Clean Air Act, its implementing regulations, and other federal environmental laws and regulations concerning vehicle emissions, vehicle and engine emissions certifications, and fuel consumption (collectively, the "federal environmental laws") and U.S. import laws, which policy shall be memorialized in a written compliance code.

3.     The Defendant will develop and promulgate compliance policies and procedures designed to reduce the prospect of violations of the federal environmental laws, U.S. import laws, and the Defendant's compliance code, and

Exh. 3-2

the Defendant will take appropriate measures to encourage and support the observance of ethics and compliance policies and procedures against violation of the federal environmental laws by personnel at all levels of the Defendant. These policies and procedures shall apply to all directors, officers, and employees (including directors, officers, and employees of its U.S. subsidiaries) and, where necessary and appropriate, outside parties acting on behalf of the Defendant in a foreign jurisdiction, including but not limited to, agents and intermediaries, consultants, representatives, distributors, teaming partners, contractors and suppliers, consortia, and joint venture partners (collectively, "agents and business partners"). The Defendant shall notify all employees that compliance with the policies and procedures is the duty of individuals at all levels of the Defendant.

4. The Defendant will ensure that it has a system of compliance policies and procedures, including a system of internal controls, reasonably designed to ensure the prevention and detection of violations of the federal environmental laws and U.S. import laws.

## Periodic Risk-Based Review

5. The Defendant will develop these compliance policies and procedures on the basis of a periodic risk assessment addressing the individual circumstances of the Defendant.

Exh. 3-3

6.      The Defendant shall review its compliance policies and procedures no less than annually and update them as appropriate to ensure their continued effectiveness, taking into account relevant developments in the field and evolving regulatory and industry standards with respect to its U.S. operations.

### Proper Oversight and Independence

7.      The Defendant will assign responsibility to one or more senior corporate executives of the Defendant for the implementation and oversight of the Defendant's compliance code, policies, and procedures. Such corporate official(s) shall have the authority to report directly to independent monitoring bodies, such as internal audit, the Defendant's Board of Directors, or any appropriate committee of the Board of Directors, and shall have an adequate level of autonomy from management as well as sufficient resources and authority to maintain such autonomy.

### Training and Guidance

8.      The Defendant will implement mechanisms designed to ensure that its compliance code, policies, and procedures are effectively communicated to all directors, officers, employees, and, where necessary and appropriate, agents and business partners. These mechanisms shall include: (a) periodic training for all directors and officers, all employees in positions of leadership or trust, positions that require such training, or positions that otherwise pose a risk to the Defendant, and,

Exh. 3-4

where necessary and appropriate, agents and business partners; and (b) corresponding certifications by all such directors, officers, employees, agents, and business partners, certifying compliance with the training requirements.

9.     The Defendant will maintain, or where necessary establish, an effective system for providing guidance and advice to directors, officers, employees, and, where necessary and appropriate, agents and business partners, on complying with the Defendant's compliance code, policies, and procedures, including when they need advice on an urgent basis or in any foreign jurisdiction in which the Defendant operates.

### Internal Reporting and Investigation

10.     The Defendant will maintain, or where necessary establish, an effective system for internal and, where possible, confidential reporting by, and protection of, directors, officers, employees, and, where appropriate, agents and business partners concerning violations of the federal environmental laws or the Defendant's compliance code, policies, and procedures.

11.     The Defendant will maintain, or where necessary establish, an effective and reliable process with sufficient resources for responding to, investigating, and documenting allegations of violations of the federal environmental laws or the Defendant's compliance code, policies, and procedures.

Exh. 3-5

**Enforcement and Discipline**

12.     The Defendant will implement mechanisms designed to effectively enforce its compliance code, policies, and procedures, including appropriately incentivizing compliance and disciplining violations.

13.     The Defendant will institute appropriate disciplinary procedures to address, among other things, violations of the federal environmental laws and the Defendant's compliance code, policies, and procedures by the Defendant's directors, officers, and employees. Such procedures should be applied consistently and fairly, regardless of the position held by, or perceived importance of, the director, officer, or employee. The Defendant shall implement procedures to ensure that where misconduct is discovered, reasonable steps are taken to remedy the harm resulting from such misconduct, and to ensure that appropriate steps are taken to prevent further similar misconduct, including assessing the internal controls, compliance code, policies, and procedures and making modifications necessary to ensure the overall compliance program is effective.

**Third-Party Relationships**

14.     The Defendant will institute appropriate risk-based due diligence and compliance requirements pertaining to the retention and oversight of all agents and business partners, including:

Exh. 3-6

a.      properly documented due diligence pertaining to the hiring and appropriate and regular oversight of agents and business partners;

b.      informing agents and business partners of the Defendant's commitment to abiding by the federal environmental laws, and of the Defendant's compliance code, policies, and procedures; and

c.      seeking a reciprocal commitment from agents and business partners, where feasible.

15.     Where necessary and appropriate, the Defendant will include standard provisions in agreements, contracts, and renewals thereof with all agents and business partners that are reasonably calculated to prevent violations of the federal environmental laws, which may, depending upon the circumstances, include: (a) representations and undertakings relating to compliance with the federal environmental laws; (b) rights to conduct audits of the books and records of the agent or business partner to ensure compliance with the foregoing; and (c) rights to terminate an agent or business partner as a result of any breach of the federal environmental laws, the Defendant's compliance code, policies, or procedures, or the representations and undertakings related to such matters.

### Mergers and Acquisitions

16.     The Defendant will develop and implement policies and procedures for mergers and acquisitions requiring that the Defendant conduct appropriate risk-

based due diligence on potential new business entities, including appropriate federal environmental laws due diligence by legal and compliance personnel.

17.     The Defendant will ensure that the Defendant's compliance code, policies, and procedures regarding the federal environmental laws apply as quickly as is practicable to newly acquired businesses or entities merged with the Defendant and will promptly:

a.     train the directors, officers, employees, agents, and business partners consistent with Paragraph 8 above on the federal environmental laws and the Defendant's compliance code, policies, and procedures regarding the federal environmental laws; and

b.     where warranted, conduct a federal environmental laws audit of all newly acquired or merged businesses as quickly as practicable.

### Monitoring and Testing

18.     The Defendant will conduct periodic reviews and testing of its compliance code, policies, and procedures designed to evaluate and improve its effectiveness in preventing and detecting violations of the federal environmental laws and the Defendant's compliance code, policies, and procedures, taking into account relevant developments in the field and evolving regulatory and industry standards.

**EXHIBIT 4**

**COMPLIANCE REPORTING REQUIREMENTS**

Hino Motors, LTD., the Defendant, agrees that it will report separately to the United States Attorney's Office for the Eastern District of Michigan and the Department of Justice, Environment and Natural Resources Division, Environmental Crimes Section (collectively hereafter, "the Offices"), periodically.

During the Term, the Defendant shall review, test, and update its compliance program and internal controls, policies, and procedures described in Exhibit 3. The Defendant shall be required to: (i) conduct an initial ("first") review and submit a first report and (ii) conduct and prepare annual follow-up reviews and reports, as described below. Prior to conducting each review, the Defendant shall be required to prepare and submit a workplan for the review. The Defendant shall also, at no less than yearly intervals during the Term, beginning no later than December 2025, meet with the Offices regarding remediation, implementation and testing of its compliance program and internal controls, policies, and procedures described in Exhibit 3.

In conducting the reviews, the Defendant shall undertake the following activities, among others: (a) inspection of relevant documents, including the Defendant's and its U.S. subsidiaries' current policies, procedures, and training materials concerning compliance with the Clean Air Act, its implementing

Exh. 4-1

regulations, and other federal environmental laws concerning vehicle emissions and certification; (b) inspection and testing of the Defendant's and its U.S. subsidiaries' systems, procedures, and internal controls, including record-keeping and internal audit procedures at sample sites; (c) meetings with, and interviews of, relevant current and, where appropriate, former directors, officers, employees, business partners, agents, and other persons; and (d) analyses, studies, and comprehensive testing of the Defendant's and its U.S. subsidiaries' compliance programs.

## Written Work Plans, Reviews and Reports

1.     The Defendant shall conduct a first review and prepare a first report, followed by at least annual follow-up reviews and reports.

2.     Within sixty calendar days of the date this Agreement is accepted by the Court or a Civil Consent Decree is entered with components of the federal government and State of California  relating to the conduct addressed in the charging Information, whichever is later, but no later than six months after the Court's acceptance of this Agreement, the Defendant shall, after consultation with the Offices, prepare and submit a written work plan to address the Defendant's first review. The Offices shall have thirty calendar days after receipt of the written work plan to provide comments.

3.     With respect to each follow-up review and report, after consultation with the Offices, the Defendant shall prepare a written work plan within forty-five calendar

Exh. 4-2

days of the submission of the prior report, and the Offices shall provide comments within thirty calendar days after receipt of the written work plan.

4.      All written work plans shall identify with reasonable specificity the activities the Defendant and its U.S. subsidiaries plan to undertake to review, test, and continue to enhance the compliance program, as described in Exhibit 3.

5.      Any disputes between the Defendant and the Offices with respect to any written work plan shall be decided by the Offices in their sole discretion.

6.      No later than one year from the date this Agreement is accepted by the Court or the Consent Decree is entered, whichever is later, but at the latest within eighteen months from the Court's acceptance of this Agreement, the Defendant shall submit to the Offices a written report setting forth: (1) a complete description of its remediation efforts to date; (2) a complete description of the testing conducted to evaluate the effectiveness of the Defendant's and its U.S. subsidiaries' compliance programs and the results of that testing; and (3) the Defendant's proposals to ensure that the Defendant's and its U.S. subsidiaries' compliance programs are reasonably designed, implemented, and enforced so that the program is effective in deterring and detecting violations of the Clean Air Act, its implementing regulations, and other federal environmental laws concerning vehicle emissions and certification. The report shall also provide an accounting of payments that have been made after the date on which this Agreement is accepted by the Court as part of the civil class action

settlement in *Express Freight International v. Hino Motors, Ltd.*, No. 1:22-cv-22483-DPG (S.D. Fla.) and Civil Consent Decree(s) and Settlement(s) with components of the federal government and State of California for civil penalties, fines, field fixes, warranty extension obligations, and mitigation programs relating to the conduct addressed in the charging Information. The report shall be transmitted to:

> Chief, White Collar Crime Unit
> United States Attorney's Office
> Eastern District of Michigan
> 211 W. Fort Street, Suite 2001
> Detroit, MI 48226

> Chief – ECS
> Environment and Natural Resources Division
> United States Department of Justice
> 150 M Street N.E.
> Washington, D.C. 20002

The Defendant may extend the time period for issuance of the first report with prior written approval of the Offices.

**Follow-up Reviews and Reports**

7. The Defendant shall undertake at least annual follow-up reviews and reports, incorporating the views of the Offices on the Defendant's prior reviews and reports, to further monitor and assess whether the Defendant and its U.S. subsidiaries' compliance programs are reasonably designed, implemented, and enforced so that they are effective at deterring and detecting violations of the Clean Air Act, their

Exh. 4-4

implementing regulations, and other federal environmental laws concerning vehicle emissions and certification. Each follow-up report shall also provide an updated accounting of payments relevant to the Forfeiture obligation described in Section 3.A.

8.      The Defendant may extend the time period for submission of any of the follow-up reports with prior written approval of the Offices.

### Meetings During the Term of Probation

9.      The Defendant shall meet with the Offices within thirty calendar days after providing each report to the Offices to discuss the report.

10.     At least annually, and more frequently if the Offices deem it appropriate in their sole discretion, representatives from the Defendant will meet to discuss the status of the review and enhanced self-reporting obligations, and any suggestions, comments, or improvements the Defendant may wish to discuss with or propose to the Offices.

### Confidentiality of Submissions

11.     Submissions by the Defendant, including the work plans and reports, may include proprietary, financial, confidential, and competitive business information. Moreover, public disclosure of the submissions could discourage cooperation and impede pending or potential government investigations, and thus undermine the objectives of the reporting requirement. For these reasons, among

Exh. 4-5

others, the submissions and the contents thereof are intended to remain and shall remain non-public, except as otherwise agreed to by the parties in writing, or except to the extent the Offices determine in their sole discretion that disclosure would be in furtherance of the Offices' discharge of their duties and responsibilities or is otherwise required by law.

Exh. 4-6

**EXHIBIT 5**

**<u>CERTIFICATION</u>**

To:   United States Attorney's Office
      Eastern District of Michigan
      Attention: Chief of the White-Collar Unit

      United States Department of Justice
      Environment and Natural Resources Division
      Attention: Chief of the Environmental Crimes Section

Re:   Guilty Plea Disclosure Certification

The undersigned certifies, pursuant to Paragraph 6 of the Plea Agreement to be filed in open court in the United States District Court for the Eastern District of Michigan, by and between the United States of America and HINO MOTORS, LTD. (the "Defendant"), that the undersigned are aware of the Defendant's disclosure obligations under Paragraph 6 of the Plea Agreement, and that the Defendant has disclosed to the United States Attorney's Office for the Eastern District of Michigan and the Department of Justice, Environment and Natural Resources Division, Environmental Crimes Section (collectively hereafter, "the Offices"), any and all evidence or allegations of conduct required pursuant to Paragraph 6 of the Plea Agreement, which includes evidence or allegations of any violation of the Clean Air Act, its implementing regulations, or the wire fraud statute committed by the Defendant's employees and agents upon any U.S. government agency, regulator, or any of the Defendant's U.S. customers ("Disclosable Information"). This obligation to disclose information extends to any and all Disclosable Information that has been

Exh. 5-1

identified through the Defendant's compliance and controls program, whistleblower channel, internal audit reports, due diligence procedures, investigation process, or other processes. The undersigned further acknowledges and agrees that the reporting requirements contained in Paragraph 6 and the representations contained in this certification constitute a significant and important component of the anticipated guilty plea and of the Offices' determination whether the Defendant has satisfied its obligations under the Plea Agreement.

The undersigned hereby certify that they are the President and Chief Executive Officer of the Defendant and that they have been duly authorized by the Defendant to sign this Certification on behalf of the Defendant.

This Certification shall constitute a material statement and representation by the undersigned and by, on behalf of, and for the benefit of, the Defendant to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and such material statement and representation shall be deemed to have been made in the Eastern District of Michigan. This Certification shall also constitute a record, document, or tangible object in connection with a matter within the jurisdiction of a department and agency of the United States for purposes of 18 U.S.C. § 1519, and

Exh. 5-2

such record, document, or tangible object shall be deemed to have been made in the Eastern District of Michigan.

Date: __January 15, 2025__          By: _____

SATOSHI OGISO
President, Member of the Board
Hino Motors, Ltd.

Exh. 5-3